UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HAYWOOD #520756,

      Plaintiff,                             Hon. Robert J. Jonker

v.                                            Case No. 1:19-cv-344

DANIEL CARR, et al.,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 13). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff is presently incarcerated at the Earnest C. Brooks Correctional Facility (LRF), but the events giving rise to this action occurred while Plaintiff was incarcerated at the Richard A. Handlon Correctional Facility (MTU). In his complaint (ECF No. 1), Plaintiff asserts the following. Shortly after arriving at MTU, Plaintiff was "coerced" into paying the Vice Lords prison gang for "protection." In the spring of 2016, Plaintiff stopped paying the Vice Lords, after which he began receiving "threats" from Vice Lords members. As a result of these threats, Plaintiff "lived in constant fear of serious injury or death."

-1-

In March and April 2016, Plaintiff informed Corrections Officer Chad Daugherty of the threats he was receiving. Plaintiff requested to be transferred to a different facility. Daugherty was aware that "several" members of the Vice Lords were assigned to the same housing unit as Plaintiff. Daugherty also "knew" that the threats Plaintiff was receiving were "credible." Nevertheless, Daugherty failed to investigate these threats or take any action to protect Plaintiff. Instead, Daugherty simply encouraged Plaintiff to "keep [his] nose clean" and "stay out of trouble."

On May 10, 2016, Plaintiff was approached by Steven Hunt, the "leader" of the Vice Lords, who informed Plaintiff that he had a choice: resume making payment to the Vice Lords or "beat another prisoner" on behalf of the Vice Lords. Hunt informed Plaintiff that, if he did not comply with his request, the Vice Lords would kill or severely injure him.

On May 11, 2016, Plaintiff informed Corrections Officer Daniel Carr of Hunt's threat. Carr denied Plaintiff's request for protection on the ground that "nobody was out to get him." Later that day, Raheem, an inmate known to be a Vice Lords recruit, was discovered carrying a knife and following Plaintiff. This prisoner acknowledged that he "had been trying to get" Plaintiff. Despite these events, Carr again refused Plaintiff's request for protection. Plaintiff informed Corrections Officer Jeffrey Lehman that he feared for his life because Raheem was not the only prisoner who was seeking to harm him. Plaintiff requested to be moved to a different housing unit, but Lehman denied this request.

The following day, Steven Hunt attacked Plaintiff, stabbing him more than twenty times. After receiving medical treatment, Plaintiff was placed in segregation. On May 13, 2016, Plaintiff was questioned by Lieutenant Jones, who asked Plaintiff if he intended to file a grievance regarding the failure by Daugherty, Carr, and Lehman to accede to his requests for protection. When Plaintiff indicated that he was going to file such a grievance, Jones offered Plaintiff a deal. Jones told Plaintiff that, if he would agree not to file a grievance, Jones would arrange for Plaintiff to be transferred to a facility closer to his hometown. Plaintiff declined this offer.

Plaintiff initiated the present action alleging that Daugherty, Carr, and Lehman failed to protect him in violation of his Eighth Amendment rights. Defendants now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff has responded to the present motion.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130

¶ P (July 9, 2007). If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Ibid.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Ibid.*

In support of their motion, Defendants have submitted evidence that, between January 1, 2013, and May 24, 2019, Plaintiff failed to pursue any grievance through all three steps of the grievance process. (ECF No. 14-2, PageID.58-59). Plaintiff disputes this conclusion, however, and has presented evidence that he did pursue through all three steps of the grievance process a single grievance regarding the claims asserted in his complaint. Specifically, the evidence submitted by Plaintiff reveals the following.

On May 14, 2016, Plaintiff filed a Step I grievance alleging that, on May 11, 2016, he informed Defendant Lehman of a credible threat to his safety, but that Lehman took no action in response. (ECF No. 22, PageID.110). On or about May 26, 2016, Plaintiff received a First Step Grievance Receipt informing Plaintiff that he should receive a response to his grievance no later than June 17, 2016. (ECF No. 22, PageID.112). This receipt further informed Plaintiff that, in the event he did not receive a response by this date, he "may submit a written request for an appeal form. . . ." (*Id.*).

Plaintiff never received a response to his Step I grievance. (ECF No. 22, PageID.95-96). On July 14, 2016, Plaintiff submitted a request for a Step II grievance. (ECF No. 22, PageID.114). Plaintiff received a Step II grievance form and submitted his Step II appeal on July 29, 2016. (ECF No. 22, PageID.118). On or about August 16, 2016, Plaintiff received a Grievance Appeal Receipt – Step II form informing Plaintiff that he should receive a response to his Step II grievance no later than September 7, 2016. (ECF No. 22, PageID.120). Plaintiff was further informed that, if he did not receive a response by this date, he "may submit [his] Step III appeal to the Director's office." (*Id.*).

On or about September 19, 2016, Plaintiff submitted a Step III appeal of this grievance. (ECF No. 22, PageID.122-23). In a decision dated October 31, 2016, Plaintiff's Step III grievance was not accepted for processing on the ground that Plaintiff failed, without "valid reason," to include the responses to his Step I and II grievances. (ECF No. 22, PageID.125).

Defendants do not contest or refute any of the evidence submitted by Plaintiff. Defendants Daugherty and Carr nevertheless assert that they are entitled to relief because the grievance that Plaintiff pursued fails to name them or otherwise allege their involvement in the matters giving rise to this action. The undersigned agrees and, therefore, recommends that Defendants Daugherty and Carr are entitled to summary judgment as they have satisfied their burden that Plaintiff failed to properly exhaust his claims against them. But, with respect to Defendant Lehman, the Court reaches the opposite conclusion.

Defendant Lehman advances two arguments that he is entitled to relief, neither of which is persuasive. First, Defendant argues that Plaintiff's Step II and Step III appeals were untimely filed. That may be true, but Defendant has presented no evidence that prison officials rejected either grievance on this basis. Because prison officials declined to enforce this procedural requirement, the Court cannot now enforce it. *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (where prison officials declined to enforce a grievance-related procedural requirement, defendant cannot rely on the prisoner's failure to comply with the procedure in question to obtain dismissal on exhaustion grounds).

Defendant next argues that the rejection of Plaintiff's Step III grievance for failure to comply with a procedural requirement compels a finding that Plaintiff failed to properly pursue his grievance through all three steps of the grievance process. Plaintiff's Step III grievance was not processed because he failed to (1) include his Step I

and Step II grievance responses or (2) "give a valid reason why [they] cannot be included." (ECF No. 22, PageID.125).

The Court finds this determination insufficient to carry Defendant's burden for two reasons. First, the relevant Policy Directive contains no requirement that a prisoner include with his Step III grievance the responses to his Step I and Step II grievances. (ECF No. 22, PageID.127-34). Likewise, the Step III grievance form articulates no such requirement. (ECF No. 22 at PageID.122). Second, and more significantly, in the very first portion of his Step III grievance appeal, Plaintiff explains that he has not submitted the responses to his Step I and Step II grievances because he never received any responses thereto. (ECF No. 22 at PageID.123). Defendant has failed to present any evidence refuting this assertion.

Plaintiff properly pursued through all three steps of the grievance process all of his available administrative remedies. That Defendants refused to consider Plaintiff's Step III grievance based on a clearly inaccurate rationale, which is not even articulated in the relevant Policy Directive, does not alter this conclusion. Moreover, Defendant has identified no authority supporting a different conclusion. The undersigned, concludes, therefore that Defendant Lehman has failed to satisfy his burden on the issue of exhaustion. Accordingly, the undersigned recommends that Defendant Lehman's motion for summary judgment be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 13) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's claims against Defendants Daugherty and Carr be dismissed without prejudice for failure to exhaust administrative remedies, but that Plaintiff's claims against Defendant Lehman proceed forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: October 1, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge